1  Richard R. Barker
2  Acting United States Attorney
   Eastern District of Washington
3  Brandon L. Pang
4  Rebecca R. Perez
   Assistant United States Attorneys
5  Post Office Box 1494
6  Spokane, WA 99210-1494
   Telephone: (509) 353-2767
7
8
9           UNITED STATES DISTRICT COURT
10       FOR THE EASTERN DISTRICT OF WASHINGTON

11  UNITED STATES OF AMERICA,
12                Plaintiff,         Case No.: 4:24-CR-6017-MKD-2
13
14           v.                      Plea Agreement
15  CHRISTIAN MEZA
16                Defendant.
17

18       Plaintiff United States of America, by and through Richard R. Barker,
19  Acting United States Attorney the Eastern District of Washington, and Brandon L.
20  Pang and Rebecca R. Perez, Assistant United States Attorneys for the Eastern
21  District of Washington, and Defendant CHRISTIAN MEZA ("Defendant"), both
22  individually and by and through Defendant's counsel, Rick Smith, agree to the
23  following Plea Agreement.
24       1.   **Waiver of Indictment, Guilty Plea and Maximum Statutory Penalties**
25       Defendant agrees to waive indictment by the Grand Jury and enter a plea of
26  guilty to the Information charging Defendant with Distribution of 40 Grams or
27  More of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi), a Class B
28  Felony.

PLEA AGREEMENT - 1

Defendant understands that the following potential penalties apply:

    a.    a term of imprisonment of not less than 5 years up to 40 years;

    b.    a term of supervised release of not less than 4 years and up to a lifetime;

    c.    a fine of up to $5,000,000; and

    d.    a $100 special penalty assessment.

2. <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

    a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

    b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

    c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

PLEA AGREEMENT - 2

    a.    sentencing is a matter solely within the discretion of the Court;

    b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

    c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

    d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

    e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

    f.    the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4. <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

    a.    pleading guilty in this case may have immigration consequences;

    b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

    c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

    d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.  Waiver of Constitutional Rights

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

   a. the right to a jury trial;
   b. the right to see, hear and question the witnesses;
   c. the right to remain silent at trial;
   d. the right to testify at trial; and
   e. the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.  Denial of Federal Benefits

Defendant understands that by entering this plea of guilty, Defendant may no longer be eligible for assistance under any state program funded under part A of Title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Defendant also understands that the Court may deny Defendant's eligibility for any grant, contract, loan,

PLEA AGREEMENT - 4

professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.]

7. Elements of the Offense

The United States and Defendant agree that to convict Defendant of Distribution of 40 Grams or More of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi), the United States would have to prove the following beyond a reasonable doubt.

    a. *First*, on or about April 6, 2024, in the Eastern District of Washington, Defendant knowingly distributed fentanyl to another person;

    b. *Second*, the substance distributed was in fact fentanyl; and

    c. *Third,* the Defendant distributed 40 grams or more of a mixture or substance containing fentanyl.

8. Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing.

In 2023, members of the Federal Bureau of Investigation (FBI) and the Blue Mountain Enforcement Narcotics Team (BENT) began investigating a drug trafficking organization in the Walla Walla, Washington area organized by Vicky VILLALOBOS. In summer 2023, a confidential informant (CI) identified VILLALOBOS as a trafficker of drugs to Idaho, Oregon, and Washington. While

PLEA AGREEMENT - 5

investigating that organization, investigators became aware of Defendant and co-defendant Antonia LEAL also as distributors of controlled substances.

Around February 2024, VILLALOBOS identified LEAL as a potential supplier of fentanyl pills. VILLALOBOS provided LEAL's phone number to the CI but was unaware of what price LEAL would charge. When the CI contacted LEAL, LEAL stated that fentanyl used to be around $2 per pill, but recently had gone up to around $4 per pill. LEAL did not believe her supplier currently had many pills on hand but would soon be resupplied.

On April 5, 2024, the CI was contacted by LEAL. LEAL informed the CI that a supplier (later identified as Defendant) was offering to sell the CI up to 4,000 fentanyl pills. After discussion, the CI and LEAL agreed that LEAL would sell 2,000 pills for $2,000, plus a fee to LEAL for arranging the deal. Because the CI had not previously purchased from LEAL or Defendant, LEAL stated that VILLALOBOS would vouch for her.

On April 6, 2024, the CI met with the supplier (Defendant) to complete the deal as arranged by LEAL. CI and Defendant met at Defendant's residence and went to safe in the back of the house where Defendant conducted the deal. The CI purchased 1,250 pills from Defendant for $1,700. While conducting the deal, the CI observed what appeared to be a few ounces of methamphetamine and approximately 5,000 more fentanyl pills, along with a Glock pistol[1] inside the safe with the drugs. Defendant provided the CI with his phone number for future sales. DEA Labs has tested the purchased pills and confirmed there to be approximately 1,376 fentanyl pills, weighing 143.9 grams.

---

[1] A state search warrant was executed the following day, April 7th, 2024 on Defendant's vehicle. Detectives located a realistic-looking Glock BB gun inside the vehicle.

PLEA AGREEMENT - 6

Defendant stipulates and agrees that between February and June of 2024, he worked with LEAL and others to distribute controlled substances as described above, including the distribution of 40 grams or more of fentanyl.

9. The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss the charges in the Indictment which pertain to this Defendant unless Defendant breaches the plea agreement.

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

10. United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

  a. *Base Offense Level*

The parties agree and stipulate that more than 40 grams but less than 160 grams of fentanyl was distributed, and attempted to be distributed in furtherance of the criminal activity jointly undertaken by Defendant and his co-conspirators; this amount was within the scope of Defendant's agreement; this amount was reasonably foreseeable to this Defendant in connection with the conspiracy; and this Defendant's relevant conduct for sentencing purposes should be calculated based upon this amount, pursuant to USSG §1B1.3.

Therefore, the parties agree and stipulate that, his base offense level is 24. *See* USSG §2D1.1(a)(5), (c)(8); USSG §1B1.3(a).

PLEA AGREEMENT - 7

b. *Special Offense Characteristics*

The parties agree that Defendant is not eligible for application of the Safety Valve pursuant to 18 U.S.C. § 3553(f), USSG §5C1.2, and USSG §2D1.1(b)(18).

The United States and the Defendant agree that Defendant's base offense level is increased by 2 levels because Defendant possessed a firearm / Dangerous weapon in connection with the offense. *See* USSG §2D1.1.

[handwritten margin: RAS / AUP / CW]

The parties agree that no other specific offense characteristics apply.

c. *Acceptance of Responsibility*

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a), (b), if Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv.    provides complete and accurate information during the sentencing process; and

    v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

d. *Agreements Regarding Representations to the Court*

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the

PLEA AGREEMENT - 8

appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

Regarding all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

    i. The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

    ii. The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

    iii. The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

    iv. The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

    v. The United States and Defendant may each respond to any arguments presented by the other;

    vi. In order to support the United States' sentencing recommendation as set forth herein, the United States

PLEA AGREEMENT - 9

                    may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

        vii.     In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

        viii.    The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

        ix.      Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

    e.    *No Other Agreements*

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances.

   f. *Criminal History*

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

  11. Incarceration

At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing. In this Plea Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

The United States agrees to recommend the low end of the Guidelines, as calculated by the United States.

Defendant may recommend any legal sentence.

PLEA AGREEMENT - 11

12. <u>Supervised Release</u>

The United States and Defendant each agree to recommend 4 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a. The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

    b. Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

    c. Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

13. <u>Criminal Fine</u>

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the

PLEA AGREEMENT - 12

Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

14. Mandatory Special Penalty Assessment

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

15. Payments While Incarcerated

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16. Additional Violations of Law Can Void Plea Agreement

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

17. Waiver of Appeal Rights

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives all of Defendant's rights to appeal any aspect of Defendant's conviction and/or the sentence the Court imposes on any grounds.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

PLEA AGREEMENT - 13

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

18. <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a. Any obligations, commitments, or representations made by the United States in this Plea Agreement shall become null and void;

    b. The United States may prosecute Defendant on all available charges;

    c. The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d. The United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate

PLEA AGREEMENT - 14

charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim alleging a violation of Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

19. **Integration Clause**

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

### Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Richard R. Barker
Acting United States Attorney

_____    5/15/25
Rebecca R. Perez                   Date
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and

PLEA AGREEMENT - 15

voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____       5/15/25
Christian Meza                    Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____       5/15/25
Rick Smith                        Date
Attorney for Defendant

PLEA AGREEMENT - 16